UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| TACTICIAN CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | CIVIL ACTION |
| | ) | NO. 21-10973-JGD |
| SUBWAY INTERNATIONAL, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OF DECISION AND ORDER ON DEFENDANT'S
## MOTION TO DISMISS THE COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)

December 1, 2021

DEIN, U.S.M.J.

### I.   INTRODUCTION

This action arises out of a written agreement dated March 6, 2019 (the "Renewal Agreement") under which the defendant, Subway International, Inc. ("Subway"),[1] agreed to renew an existing contract to purchase online software and data products from the plaintiff, Tactician Corporation ("Tactician"), for use in the United Kingdom, Germany, France and Australia.  The crux of the parties' dispute is whether the Renewal Agreement required Subway to purchase Tactician's products for a three-year period or whether Subway was free to terminate the Agreement after making payments for two years.  Tactician contends that the plain language of the Renewal Agreement established a three-year commitment for the

---

[1] According to the defendant, its correct name is Subway International B.V. (Def. Mem. (Docket No. 7) at 1 n.1).

purchase and sale of the products, whereas Subway argues that references to a three-year

commitment contained in the Agreement constituted a commitment to the prices at which

Tactician agreed to sell its online software and data products to the defendant but has no

bearing on the duration, or term, of the parties' contract.  According to Subway, the term of the

Renewal Agreement was governed by a separate Online License Agreement, which it claims was

fully incorporated into and made a part of the Renewal Agreement.  Pursuant to Sections 4 and

4.1 of that Agreement, "[t]he term of an annual license is one year from the purchase date."

Thus, Subway contends that its commitment to purchase online software and data from

Tactician expired annually, and that it was entitled to cancel or terminate the Renewal

Agreement after one or two years.

It is undisputed that Subway prepaid for Tactician's online software and data products

for two years following its execution of the Renewal Agreement.  However, on December 7,

2020, Subway notified the plaintiff that it would not be purchasing Tactician's products for a

third year and that it was terminating the parties' arrangement pursuant to Sections 4 and 4.1

of the Agreement.  Tactician objected and insisted that Subway remains responsible for

payment of all amounts due for the third year of Renewal Agreement.  After efforts by the

parties' counsel failed to resolve the dispute, Tactician filed the instant lawsuit against Subway.

By its Verified Complaint, Tactician has asserted claims against the defendant for breach of

contract (Count One); breach of the implied covenant of good faith and fair dealing (Count

Two); quantum meruit (Count Three); unjust enrichment (Count Four); fraud, deceit and

misrepresentation (Count Five); and violation of Mass. Gen. Laws ch. 93A ("Chapter 93A")

(Count Six).

[2]

The matter is before the court on the "Defendant's Motion to Dismiss the Complaint Pursuant to Fed. R. Civ. P. 12(b)(6)" (Docket No. 6).  By its motion, Subway argues that under the plain and unambiguous terms of the parties' Renewal Agreement, it was under no obligation to purchase Tactician's products for a third year.  It further argues that all six Counts of the Verified Complaint should be dismissed because Tactician has failed to state a claim against it under any legal theory.  For all the reasons detailed herein, the defendant's motion to dismiss is ALLOWED IN PART and DENIED IN PART.  While this court finds that Tactician has failed to state a plausible claim for relief with respect to Counts Two, Five and Six, it concludes that ambiguities regarding the term of the parties' Renewal Agreement warrant the denial of Subway's motion with respect to the breach of contract claim alleged in Count One.  This court also finds that the plaintiff is entitled to pursue its alternative claims for unjust enrichment and quantum meruit at this early stage in the litigation.  Accordingly, Subway's motion is ALLOWED with respect to Counts Two, Five and Six but DENIED with respect to Count One, Three and Four of Tactician's Verified Complaint.

## II.    STATEMENT OF FACTS

When ruling on a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6), the court must accept as true all well-pleaded facts and give the plaintiff the benefit of all reasonable inferences.  See Cooperman v. Individual Inc., 171 F.3d 43, 46 (1st Cir. 1999).  "Ordinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment."  Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001).  "There is, however, a narrow exception 'for documents the authenticity of which are not disputed by the

[3]

parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint.'"  Id. (quoting Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)).  Applying these standards to the instant case, the relevant facts are as follows.[2]

### The Parties' Renewal Agreement

On March 29, 2019, Subway executed a "Renewal Agreement" from Tactician dated March 6, 2019.  (Verified Complaint (Docket No. 12) ("Compl.") ¶ 3 & Ex. A thereto).  Pursuant to the Agreement, Tactician agreed to renew an existing contract for the sale of online software and data products to Subway, and Subway confirmed its "commitment to purchase, per configuration, prices, terms and conditions as outlined in [the] agreement."  (Compl., Ex. A). The prices, terms and conditions are described in the Renewal Agreement as follows:

> Outlined in the attached schedules are the renewal cost of Tactician online software and data products for the United Kingdom (Schedule A); Germany (Schedule B); France (Schedule C); and Australia (Schedule D), according to the following terms and conditions:
>
> - *Three (3) year agreement commitment, prepaid annually, according to cost specified in the attached schedules*.
> - Effective date: April 1st, 2019.
> - Payment Terms: Net 30, invoiced on March 1 of each agreement year.
> - All prices are expressed in Euros (€), unless specified otherwise.  First year agreement is expressed in USD and invoiced on March 1, 2019.
> - Number of Users: As specified in the attached schedules.
> - *Usage of Tactician's online products are governed by the Tactician Online License Agreement:* http://www.tactician.com/online-license-agreement/
> - *International Data price commitment is for 3 years and non-refundable*.

---

[2] In accordance with the applicable standard, this court has considered the exhibits attached to Tactician's Verified Complaint (Docket No. 12) ("Compl., Ex.___") and the exhibits attached to the Declaration of John F. Farraher, Jr., Esq. in Support of Defendant's Motion to Dismiss (Docket No. 8) ("Farraher Decl., Ex.___").

(Id. (emphasis added)).  The attached schedules include, for each of the four countries listed in the Renewal Agreement, a list of products, the number of users corresponding to each product, the first year price expressed in U.S. dollars, the second year price expressed in euros, and the third year price expressed in euros.  (Id.).  They also include the total cost of the products for each of the three years.  (Id.).

The Online License Agreement referenced in the sixth bullet point of the Renewal Agreement quoted above sets forth the terms and conditions under which online service subscribers can purchase "a limited, non-exclusive, non-transferable, license" to use Tactician's online map and report creation and analysis service ("Service").  (Farraher Decl., Ex. 1 ¶¶ 1, 3). As specified in that Agreement, Tactician requires "[a] separate subscription license ... for each unique user having access" to Tactician's Service.  (Id. ¶ 2).  Following payment of a subscription fee, Tactician grants the individual "Subscriber" a "Subscription" [3] consisting of "access to the Service for the duration of the Subscription Period for purposes of creating an unlimited number of maps and reports."  (Id.).  The "Subscription Period" is defined in Section 4 of the Online License Agreement, which provides in relevant part as follows:

> 4. TERM AND TERMINATION:  The Term of the license granted herein shall be for the Subscription Period of one year.  Subject to Section 4.1 you may terminate or cancel your Subscription at any time.  Upon termination or expiration of the Subscription, Subscriber must discontinue all use of the Service ....

(Id. ¶ 4).  Section 4.1 of the Agreement further provides:

> 4.1 TERMS OF ANNUAL SUBSCRIPTION PURCHASES: The term of an annual license is one year from the purchase date.  An annual license is billed at the

_____

[3] A "Subscriber" is defined in the Renewal Agreement as "the individual who has purchased a Subscription from Tactician to use the Service and has a Sign In Name and PIN Code to gain access to the service."  (Compl., Ex. A ¶ 1).  A "Subscription" refers to "a limited, non-exclusive, non-transferable, license to use the Service during the Subscription Period and for a single Subscriber only[.]"  (Id. ¶ 3).

> time of purchase and is not automatically renewed at the end of the license
> term.  You may terminate or cancel your Subscription for a full refund within 30
> days of the purchase date.  You understand and agree that cancellation of your
> Subscription and the refund as described above, are your sole rights and
> remedies with respect to any dispute with Tactician.  Tactician reserves the right
> to discontinue providing the Service at any time.

(Id. ¶ 4.1).

Tactician asserts that "the clear and unambiguous language of the Renewal Agreement creates a three year commitment" and that "[t]he Online Agreement is referenced only to define and determine the way the products were to be used."  (Pl. Opp. Mem. (Docket No. 13) at 6 (emphasis in original)).  In other words, Tactician asserts that the only provisions of the Online License Agreement that the parties adopted as part of the Renewal Agreement are those that address the manner in which its online products are used by an individual user, and that the one year period referenced in the Online Agreement does not relate to the overall terms governing Tactician's relationship with Subway.  It also claims that it entered into a number of third-party agreements in reliance on Subway's commitment to comply with all three years of the Renewal Agreement, and that the third-party agreements were necessary for Tactician to perform its contractual obligations to Subway.  (Compl. ¶ 25).  However, Subway insists that "[t]he Online License Agreement is incorporated into and is a part of the [parties' Renewal] Agreement[,]" and that under the plain and unambiguous terms of Sections 4 and 4.1, it had no obligation to renew its subscription after one year from the purchase date.   (Def. Mem. (Docket No. 7) at 6-7).

**Subway's Termination of the Renewal Agreement**

The Renewal Agreement went into effect on April 1, 2019, and the parties' arrangement continued without incident for two years.  Thus, the first year of the Renewal Agreement ran

from April 1, 2019 through March 30, 2020, and the second year of the Renewal Agreement ran

from April 1, 2020 through March 30, 2021.  (Compl. ¶¶ 7, 10 & Ex. A thereto).  Tactician does

not dispute that Subway complied with the terms and conditions of the Renewal Agreement by

prepaying for each of those years in accordance with the costs specified in the schedules

attached to the Agreement.  (See id. ¶¶ 8, 11 & Ex. A thereto).  According to the plaintiff,

Subway used Tactician's products and services without complaint during the first and second

years of the Renewal Agreement.  (Id. ¶¶ 9, 12, 13).

The third year of the Renewal Agreement was scheduled to run from April 1, 2021

through March 30, 2022.  (Id. ¶ 14).  However, in a letter to Tactician dated December 7, 2020

(the "Termination Notice"), Subway informed the plaintiff that it would not be renewing the

Agreement between the parties.  (Id., Ex. B).  Specifically, as Subway stated therein:

> This letter is to service (sic) as notice ("**Notice**") that, pursuant to Section 4 and
> 4.1 of the [Online License & Renewal Agreement dated March 6, 2019], [Subway]
> will not renew the above noted Agreement for the last year of the Agreement
> (which is scheduled to start April 1, 2021) as it applies only to the following
> countries: France, Germany, UK & Ireland.[4]

(Id. (footnote added)).

Tactician disputed Subway's position that it was entitled to terminate the Renewal

Agreement or avoid making payments for the third year of the parties' contract.  (Compl. ¶ 17).

Accordingly, Tactician submitted invoices to Subway for the third year of the Renewal

Agreement and continued to offer and provide its services to Subway despite the defendant's

---

[4] It is undisputed that the Renewal Agreement includes costs for Tactician's online software and data
products for the United Kingdom, Germany, France and Australia, but does not apply to Ireland.
(Compl., Ex. A; Farraher Decl., Ex. 2 at 1).  Accordingly, Subway's reference to Ireland and its omission of
Australia in its December 7, 2020 letter to Tactician was an error.

refusal to pay the invoices.  (Id. ¶¶ 24, 26, 28 & Ex. C thereto).  Attorneys for the parties

attempted to resolve the dispute without litigation but their efforts proved unsuccessful.  (Id. ¶

19).  Accordingly, on May 13, 2021, Tactician filed this lawsuit against Subway in state Superior

Court, and on June 10, 2021, the matter was removed to this court.  (Docket Nos. 1 & 12).

Additional factual details relevant to this court's analysis are set forth below.

### III.   ANALYSIS

#### A.   Standard of Review

Subway has moved to dismiss Tactician's claims against it, pursuant to Fed. R. Civ. P.

12(b)(6), for failure to state a claim.  Motions to dismiss under Rule 12(b)(6) test the sufficiency

of the pleadings.  Thus, when confronted with such a motion, the court accepts as true all well-

pleaded facts and draws all reasonable inferences in favor of the plaintiff.  See Cooperman, 171

F.3d at 46.  Dismissal is only appropriate if the complaint, so viewed, fails to allege "a plausible

entitlement to relief."  Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir. 2007)

(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559, 127 S. Ct. 1955, 1967, 167 L. Ed. 2d 929

(2007)).

"The plausibility inquiry necessitates a two-step pavane."  Garcia-Catalan v. United

States, 734 F.3d 100, 103 (1st Cir. 2013).  "First, the court must distinguish 'the complaint's

factual allegations (which must be accepted as true) from its conclusory legal allegations (which

need not be credited).'"  Id. (quoting Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir.

2012)).  "Second, the court must determine whether the factual allegations are sufficient to

support 'the reasonable inference that the defendant is liable for the misconduct alleged.'"  Id.

(quoting Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011)) (additional citation omitted).

[8]

This second step requires the reviewing court to "draw on its judicial experience and common sense." Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009)).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atl., 550 U.S. at 555, 127 S. Ct. at 1964-65 (citations omitted).  The factual allegations "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Id. at 555, 127 S. Ct. at 1965 (citations omitted). For the reasons set forth below, this court finds that Tactician has stated plausible claims against Subway for breach of contract, quantum meruit and unjust enrichment, but that it's remaining claims must be dismissed.

**B.  Count One: Claim for Breach of Contract**

In Count One of its Verified Complaint, Tactician alleges that Subway breached the Renewal Agreement by terminating the Agreement prior to the expiration of the three-year term established therein, and by failing to pay amounts due for the third year of the contract. Subway has moved to dismiss this claim on the grounds that the Renewal Agreement had a term of one year, and that Subway had no obligation to purchase Tactician's products during the third year of the Agreement.  For the reasons that follow, this court finds that the length of the term of the Renewal Agreement is ambiguous, and the question whether the parties were bound by a three-year contract or by the one-year term contained in Sections 4 and 4.1 of the Online License Agreement cannot be resolved without further development of the evidentiary record.  Therefore, the defendant's motion to dismiss is denied with respect to this claim.

## General Principles of Contract Interpretation

The parties' dispute requires this court to interpret the Renewal Agreement to determine whether the parties agreed to a three-year commitment for the purchase and sale of Tactician's online software and data products or whether, under Sections 4 and 4.1 of the Online License Agreement, their contract had a term of only one year.  It is undisputed that the interpretation of the Renewal Agreement is governed by the law of Massachusetts.  (See Def. Mem. at 5; Pl. Mem. at 2).  Under Massachusetts law, "[i]nterpretation of a contract is ordinarily a question of law for the court."  Weiss v. DHL Express, Inc., 718 F.3d 39, 44 (1st Cir. 2013).  Where an agreement between the parties is contained in more than one document, such as the Renewal Agreement and the Online License Agreement at issue in this case, those documents "will be read together."  Id. at 45 (quoting FDIC v. Singh, 977 F.2d 18, 21 (1st Cir. 1992)).  "Absent an ambiguity, the court interprets a contract according to its plain terms, in a manner that gives reasonable effect to each of its provisions."  Id. (internal quotations and citations omitted).  However, "where the [c]ourt finds that the terms of a contract are ambiguous, their interpretation is a question of fact for the jury."  Bettencourt v. Jeanne D'Arc Credit Union, 370 F. Supp. 3d 258, 263 (D. Mass. 2019).

"To answer the ambiguity question, the court must first examine the language of the contract by itself, independent of extrinsic evidence concerning the drafting history or the intention of the parties."  Bank v. Thermo Elemental Inc., 451 Mass. 638, 648, 888 N.E. 2d 897, 907 (2008).  "A contract is not ambiguous simply because litigants disagree about its proper interpretation."  Weiss, 718 F.3d at 45 (quoting FDIC v. Singh, 977 F.2d 18, 22 (1st Cir. 1992)).  Rather, "[c]ontract language is ambiguous where the phraseology can support a reasonable

difference of opinion as to the meaning of the words employed and the obligations

undertaken." <u>Bank</u>, 451 Mass. at 648, 888 N.E.2d at 907 (quoting <u>President & Fellows of

Harvard Coll. v. PECO Energy Co.</u>, 57 Mass. App. Ct. 888, 896, 787 N.E.2d 595 (2003)) (internal

quotations and citation omitted).

### Existence of an Ambiguity

This court finds that the plain language of the Renewal Agreement can support

reasonable differences of opinion regarding the duration, or term, of the parties' contractual

obligations.  As described above, the opening paragraph of the Renewal Agreement provides

that "[o]utlined in the attached schedules are the renewal cost of Tactician online software and

data ... according to the following terms and conditions[.]" (Compl., Ex. A).  Those terms and

conditions include a bullet point that provides, "[t]hree (3) year agreement commitment,

prepaid annually, according to cost specified in the attached schedules" and a bullet point that

reads, "International Data price commitment is for 3 years and non-refundable."  (<u>Id.</u>).  They

also include a bullet point stating that "[u]sage of Tactician's online products are governed by

the Tactician Online License Agreement ... [,]" which references a term of only one year. (<u>Id.</u>).

As Subway argues in support of its motion to dismiss, the "three (3) year agreement

commitment" and the 3 year "International Data price commitment" may reasonably be

interpreted to reflect Tactician's pricing commitment over a three-year period, with the

duration of the Agreement and other matters not specifically set forth in the Renewal

Agreement governed by the provisions of the Online License Agreement.  (<u>See</u> Def. Mem. at 7).

In contrast, as Tactician argues, the Agreements can be read together so that the Online License

Agreement is intended to apply to individual users, and not corporate entities such as Subway,

[11]

and that only specific paragraphs of the Online License Agreement relating to limitations on use of Tactician's products are incorporated into the Renewal Agreement.  At this stage, both interpretations are plausible and extrinsic evidence, especially related to the details of the parties' arrangements and how Subway used the products prior to termination, may be necessary to interpret the Agreements.  Therefore, the motion to dismiss must be denied.

Subway's Interpretation

Subway's interpretation is supported by the fact that the Renewal Agreement provides that the Online License Agreement governs the "usage" of Tactician's online products and does not purport to incorporate only specific provisions of the Online License Agreement.  While Tactician argues that "Paragraphs 3 and 3.1 of the Online Agreement [which describe the scope of the license and limitations on permissible uses of Tactician's online products and services] are the only paragraphs which set forth conditions of the 'use' of the [products] licensed thereunder[,]" an argument can be made that this is too limited a reading of the Online License Agreement.  (See Pl. Mem. at 5 (emphasis in original)).  Rather, an argument can be made that all of the provisions of the Online License Agreement relate to the "usage" of Tactician's products, especially since "usage" is an undefined term.

As an initial matter, the period of time in which a user has access to Tactician's products may be deemed to be included in the term "usage."  Moreover, other paragraphs of the Online License Agreement clearly relate to the licensee's ability to "use" the products.  For example, paragraph 5 limits the user's "sharing of sign in name and pin code" and paragraph 9 applies to "export restrictions."  (Farraher Decl., Ex. 1 ¶¶ 5, 9).  Other provisions recognize Tactician's ability to disrupt service in order to conduct routine and emergency maintenance (which

[12]

disruption would clearly affect the licensee's use of the products), and limit Tactician's

responsibility for access issues that might occur during peak service times.  (Id. ¶¶ 2, 5, 6).

Finally, but without limitation, additional provisions in the Online Licensing Agreement might

logically be included as part of the parties' rights and obligations under the Renewal

Agreement, such as limitations on warranties and liability, as well as a choice of law provision.

(Id. ¶¶ 6, 7, 10, 11).  Thus, an argument can be made that all the provisions of the Online

License Agreement are incorporated into the Renewal Agreement.  In order to reconcile the

two differing time periods in the Renewal Agreement and the Online License Agreement, the

Renewal Agreement may be read to define the length of time Tactician was obligated to

maintain its prices while the Online Licensing Agreement defines the user's access to the

products.  This ambiguity requires extrinsic evidence to understand how the two Agreements

can be read together.

Tactician's Interpretation

On the other hand, this court finds that Tactician's interpretation of the Renewal

Agreement is plausible as well.  As the plaintiff argues, the references to a "[t]hree (3) year

agreement commitment" and an "International Data price commitment ... for 3 years" could

reasonably be viewed as a three-year commitment by Subway for the purchase of the products

listed in the attached schedules, as well as a three-year commitment by Tactician to keep the

prices of the products sold to Subway at the levels listed in the attached schedules.  The

Renewal Agreement could be interpreted to exclude the one-year period in the Online License

Agreement based on the term "usage," and/or the Online License Agreement could be found to

[13]

be applicable to individual users and not corporate entities with multiple users.  (See note 3,

supra).  In light of these equally plausible interpretations, the Agreements are ambiguous.

As an initial matter, the Renewal Agreement does not purport to incorporate the Online

License Agreement in its entirety.  Only "usage" of Tactician's online products is to be governed

by the Online License Agreement.  It is possible that "usage" was not intended to include the

length of time the licensee would have access to the products.[6]  Thus, the phrase "[u]sage of

Tactician's online products" could be defined to mean "the action ... or mode of using"

Tactician's online products and services.  See Usage Definition, Merriam-Webster.com,

https://www.merriam-webster.com/dictionary/usage (last visited Nov. 26, 2021) (defining

"usage" to include "the action, amount, or mode of using").

In addition, it is plausible that the Renewal Agreement and the Online License

Agreement are simply directed to different audiences, with a different length of commitment

applicable to each audience.  As Tactician argues:

> It is true that some of the Plaintiff's online products were subject to a one year
> agreement between the Plaintiff and any of its customers who chose to become
> licensed under the Online Agreement.  However, the Defendant did not become
> licensed under the Online Agreement.  The Defendant was permitted to use the
> Plaintiff's products under the first paragraph of the Renewal Agreement which
> states "outlined in the attached schedules are the renewal cost of Tactician
> online software and data products...."

(Pl. Mem. at 5).

The plaintiff's proposed interpretation is supported by the schedules attached to the

Renewal Agreement.  Those schedules not only include three years of renewal costs for each of

---

[6] Similarly, the reference to "usage" may have been intended to be limited to paragraphs 3 and 3.1 of
the Online License Agreement as Tactician argues since those paragraphs do describe the scope of the
license and define the limits of permissible use.

the products that Subway intended to purchase from Tactician, but also list the number of

users permitted to use those products.  (Compl., Ex. A at Schedules A-D).  For example, but

without limitation, the schedules authorize 20 individuals to use Tactician's "Online US Base

System for Germany[,]" its "Micro-Market Boundaries for Germany" and its "German Working

(Daytime) Population Count by Micro-Market[.]"  (Id. at Schedule B).  It also authorizes 15

individuals to use Tactician's "Online US Base System for Australia[,]" its "Census Updates and

Projections for Australia[,]" its "Daytime Population Data for Australia[,]" and its "Subway

Restaurant Locations and Trade Area Map Updates for Australia[.]"  (Id. at Schedule D).  While

the Online License Agreement requires "[a] separate subscription license ... for each unique

user having access" to Tactician's "Service," there is no indication in the record that each of the

individual Subway users required an individual license.  (See Farraher Decl., Ex. 1 ¶¶ 1,2).

Similarly, the Online License Agreement purports to be "a legal agreement between ... the

online service subscriber ... and Tactician Corporation (Tactician)."  (See id. at Introduction).

There do not seem to be individual agreements with individual users in the case of Subway's

Agreement.  These distinctions are consistent with Tactician's interpretation of the

Agreements.  Under that interpretation, the Online License Agreement applies to individual

users who obtain a license to use Tactician's existing online map and report creation and

analysis service, whereas the Renewal Agreement describes an agreement between two

companies for the purchase and sale of what appear to be customized products.   If this is the

case, there is no conflict between the time periods in the two Agreements.  Extrinsic evidence

may be available to explain the parties' relationship and application of the provisions of the two

Agreements to the parties' business affairs.  Dismissal of the complaint at this stage is not appropriate.

Finally, Subway argues that interpreting the Renewal Agreement as binding Subway to a three-year contract "would effectively eradicate Sections 4 and 4.1 of the Online License Agreement in violation of a bedrock cannon of contract interpretation that requires the Court to give 'every word and phrase of a contract ... meaning, and [treat none] as surplusage if any other construction is rationally possible.'"  (Def. Mem. at 7 (quoting Computer Sys. of Am., Inc. v. W. Reserve Life Assur. Co. of Ohio, 19 Mass. App. Ct. 430, 437, 475 N.E.2d 745, 751 (1985)).  This argument is not persuasive.  The one-year periods of those sections could apply to other customers of Tactician, but not to Subway, which is bound by the Renewal Agreement.  Thus, Subway has not shown that it is entitled to relief on this basis.

"If the language of a contract is ambiguous a motion to dismiss must be denied." Aware, Inc. v. Centillium Commc'ns, Inc., 604 F. Supp. 2d 306, 310 (D. Mass. 2009).  Because the plaintiff's interpretation of Renewal Agreement is at least plausible, this court denies Subway's motion to dismiss Count One of the Verified Complaint.  See id. at 311 (denying motion to dismiss where contract contained an ambiguity and language elsewhere in the agreement "confirms that plaintiff's proposed interpretation is at least plausible").

### C.  Count Two: Claim for Breach of Implied Covenant of Good Faith and Fair Dealing

In Count Two of its Verified Complaint, Tactician alleges that Subway's actions in terminating the Renewal Agreement and refusing to pay for the third year of the Agreement constituted a breach of the covenant of good faith and fair dealing.  Subway has moved to dismiss this claim on the grounds that the plaintiff has failed to allege that the defendant

[16]

engaged in any conduct beyond an ordinary breach of contract.  (See Def. Mem. at 8).  This court agrees that Count Two must be dismissed for failure to state a claim for relief.

"[E]very contract in Massachusetts is subject to an implied covenant of good faith and fair dealing[.]"  Chokel v. Genzyme Corp., 449 Mass. 272, 276, 867 N.E.2d 325, 329 (2007).  "The purpose of the implied covenant is to ensure that neither party interferes with the ability of the other to enjoy the fruits of the contract, and that, when performing the obligations of the contract, the parties remain faithful to the intended and agreed expectations of the contract."  Id. (quotations and citations omitted).  A breach of the implied covenant "occurs when one party violates the reasonable expectations of the other."  Id.

"[N]ot every breach of contract is a breach of the implied covenant of good faith and fair dealing."  Christensen v. Kingston Sch. Comm., 360 F. Supp. 2d 212, 226 (D. Mass. 2005).  "In order to prevail [on such a claim], the plaintiff must 'present evidence of bad faith or an absence of good faith.'"  Young v. Wells Fargo Bank, N.A., 717 F.3d 224, 238 (1st Cir. 2013) (quoting T.W. Nickerson, Inc. v. Fleet Nat'l Bank, 456 Mass. 562, 924 N.E.2d 696, 706 (2010)) (punctuation omitted).  "Lack of good faith 'carries an implication of a dishonest purpose, conscious doing of wrong, or breach of duty through motive of self-interest or ill will.'"  Id. (quoting Hartford Accident & Indem. Co. v. Millis Roofing & Sheet Metal, Inc., 11 Mass. App. Ct. 998, 999, 418 N.E.2d 645, 647 (1981)).  Ultimately, "the core question remains whether the alleged conduct was motivated by a desire to gain an unfair advantage, or otherwise had the effect of injuring the other party's rights to the fruits of the contract."  Id.

Tactician has not alleged sufficient facts to support such a claim against Subway in this case.  "Conceptually, claims for breach of the implied covenant of good faith and fair dealing

[17]

are distinct from simple breach of contract claims and require additional factual allegations of unfairly leveraging the contract terms for undue economic advantage." <u>Christensen</u>, 360 F. Supp. 2d at 229.  Here, the plaintiff relies on the same facts it alleges in support of its claim for breach of contract, including allegations that Subway violated the terms of the Renewal Agreement by terminating the Agreement after two years of payments, insisting it had a right to do so, and failing to make payments for the third year of the Agreement.  (<u>See</u> Compl. ¶¶ 15, 18, 28, 30, 31).  Tactician has alleged no facts indicating that Subway acted dishonestly, attempted to take unfair advantage of the plaintiff or otherwise acted in bad faith.  Therefore, its complaint is inadequate to withstand Subway's motion to dismiss Count Two.  <u>See</u> <u>Brand Group Int'l , LLC v. Established Brands Int'l, Inc.</u>, No. 10-11783-JLT, 2011 WL 3236078, at *3 (D. Mass. July 26, 2011) (ruling that plaintiff failed to state a claim for breach of the implied covenant of good faith and fair dealing where plaintiff merely repeated its breach of contract allegations without alleging facts indicating "a lack of honesty, taking unfair advantage, or bad faith" on the part of the defendant); <u>Equip. & Sys. For Industry, Inc. v. Northmeadows Constr. Co., Inc.</u>, 59 Mass. App. Ct. 931, 932, 798 N.E.2d 571, 575 (2003) (affirming dismissal of claim for breach of the implied covenant of good faith and fair dealing where there was nothing in the complaint to support an inference that defendant acted in bad faith or with "a dishonest purpose, consciousness of wrong, or ill will in the nature of fraud.").

### D.   Counts Three and Four: Claims for Quantum Meruit and Unjust Enrichment

In Counts Three and Four of its Verified Complaint, Tactician asserts claims against Subway for quantum meruit and unjust enrichment.  Specifically, in Count Three, the plaintiff alleges in relevant part as follows:

33.     Tactician has offered and provided the services it is required to provide under the Renewal Agreement for the Third Year, and the availability of such services have permitted Subway to enjoy their use.

34.     The actions and activities of Subway as aforesaid have resulted in Tactician's entitlement to the fair value of services it has provided to Subway for the Third Year, which fair value is substantial and for which Tactician is entitled to recover under the theory of quantum meruit.

(Compl. ¶¶ 33, 34).   In Count Four, Tactician claims that "[a]s a result of the foregoing, Subway has been substantially unjustly enriched by the services provided by Tactician, for which Tactician is entitled to recover under the theory of unjust enrichment."  (Id. ¶ 36).  Subway argues that equitable claims such as quantum meruit and unjust enrichment are not available where, as here, a contract governs the parties' relationship and provides the plaintiff with an adequate remedy at law.  (Def. Mem. at 8-9).  It also argues that Tactician has failed to state a claim under either theory because it has not alleged that it conferred a benefit upon Subway that Subway accepted.  Although the issue is a close one, this court declines to dismiss Counts Three and Four at this early stage in the litigation.

Ordinarily, equitable claims such as claims for quantum meruit or unjust enrichment are not available in Massachusetts where the party asserting the claims "has an adequate remedy at law."  Scarpaci v. Lowe's Home Ctr., LLC, 212 F. Supp. 3d 246, 253 (D. Mass. 2016). "The term 'adequate remedy at law' refers to the existence of [a] legal (as opposed to equitable) theory by which the plaintiff may seek recovery; it does not, however, require the existence of a legal theory under which the plaintiff is ultimately successful on obtaining a recovery."  Id. at 253 n.7.  See also Bettencourt, 370 F. Supp. 3d at 265 ("The availability of an adequate remedy at law, even if ultimately unviable, precludes a claim for unjust enrichment."). In the instant case, "[the] claim for breach of contract is a legal remedy[.]"  Scarpaci, 212 F.

[19]

Supp. 3d at 253.  "Because the [Renewal] Agreement apparently governs the parties'

relationship, [Tactician] is not entitled to equitable recovery in addition to its breach of contract

claim."  Aware, Inc., 604 F. Supp. 2d at 312.  See also Scarpaci, 212 F. Supp. 3d at 253 (finding

that equitable claims for unjust enrichment and quantum meruit were not available where a

valid contract existed between the parties).

Nevertheless, "Fed. R. Civ. P. 8(d) ... permits Plaintiffs to plead alternative and even

inconsistent legal theories, such as breach of contract and unjust enrichment, even if Plaintiffs

only can recover under one of these theories."  Vieira v. First Am. Title Ins. Co., 668 F. Supp. 2d

282, 295 (D. Mass. 2009).  Although Tactician will eventually need to choose which theory of

recovery to pursue, there is no need to do so at this early stage in the litigation.  See Aware,

Inc., 604 F. Supp. 2d at 312 (finding "no reason to require plaintiff to choose a theory of

recovery" at the pleading stage of the litigation and refusing to dismiss claim for unjust

enrichment even though plaintiff asserted claim for breach of contract).  Accordingly, this court

declines to dismiss Counts Three and Four on the grounds that the plaintiff has an adequate

remedy at law.

This court also concludes that dismissal is not warranted on the grounds that Tactician's

allegations are insufficient to state a claim for unjust enrichment or quantum meruit.  "To

succeed on a claim for unjust enrichment, a plaintiff must show (1) a benefit conferred upon

defendant by plaintiff, (2) an appreciation or knowledge by defendant of the benefit, and (3)

that acceptance or retention of the benefit under the circumstances would be inequitable

without payment for its value."  Scarpaci, 212 F. Supp. 3d at 253.  Similarly, "[t]o achieve

recovery upon the theory of quantum meruit, the claimant must prove (1) that it conferred a

[20]

measurable benefit upon the defendant[]; (2) that the claimant reasonably expected

compensation from the defendant[]; and (3) that the defendant[ ] accepted the benefit with

the knowledge, actual or chargeable, of the claimant's reasonable expectation." Nardone v. LVI

Servs., Inc., 94 Mass. App. Ct. 326, 333, 113 N.E.3d 854, 861 (2018) (quoting Finard & Co., LLC v.

Sitt Asset Mgt., 79 Mass. App. Ct. 226, 229, 945 N.E.2d 404 (2011)).  Here, Subway contends

that Tactician has failed to state a claim under either theory because it "fails to allege that a

benefit was conferred upon Subway and that Subway accepted this benefit."  (Def. Mem. at

10).  This court disagrees.

Tactician alleges, in paragraph 33 of its Verified Complaint, that it not only offered but

also "provided the services it is required to provide" to Subway for the third year of the

Renewal Agreement, and that "the availability of such services have permitted Subway to enjoy

their use."  (Compl. ¶ 33).  This is enough, albeit barely, to support a claim for relief.  Accepting

these allegations as true and drawing all reasonable inferences therefrom in favor of the

plaintiff, as this court is required to do on a motion to dismiss, supports a claim that Tactician

conferred a benefit upon Subway that Subway accepted without paying for the benefit.[7]  See

Cooperman, 171 F.3d at 46.  Therefore, Tactician has stated viable claims against the defendant

for unjust enrichment and quantum meruit.

---

[7] Subway points to the December 7, 2020 Termination Notice to support its assertion that it declined
Tactician's services during the third year of the Renewal Agreement.  (See Def. Mem. at 10 (citing
Compl. ¶ 15 in which Tactician alleges facts describing the substance of the Termination Notice)).
However, the Termination Notice provides no support for this argument.  Although Subway stated in the
Notice that it would not be renewing the Renewal Agreement for a third year, nothing therein defeats
Tactician's allegations that it did in fact provide services to Subway during the third year of the Renewal
Agreement and that Subway "enjoy[ed] their use."  (See Compl. ¶ 33 and Ex. B thereto).  Therefore, the
Termination Notice does not alter this court's conclusion that the plaintiff has stated plausible claims for
quantum meruit and unjust enrichment.

**E.  Count Five: Claim for Fraud, Deceit and Misrepresentation**

The plaintiff's next claim, in which it seeks to hold Subway liable for fraud, deceit and misrepresentation based on the signing and delivery of its December 7, 2020 Termination Notice, warrants a different result.  To state such a claim under Massachusetts law, the plaintiff must allege "that the defendant made a false representation of a material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon, and that the plaintiff relied upon the representation as true and acted upon it to his damage."  Rogers v. Nstar Elec., 389 F. Supp. 2d 100, 108 (D. Mass. 2005) (quoting Danca v. Taunton Sav. Bank, 385 Mass. 1, 8, 429 N.E.2d 1129 (1982)).  In Count Five, Tactician alleges that Subway knew it had no right to terminate the Renewal Agreement unilaterally, and that it was obligated to perform under the Agreement for a third year, but that it signed and delivered the Termination Notice to the plaintiff "for the specific purpose of attempting to defraud, deceive and misrepresent its rights under the Renewal Agreement."  (Compl. ¶¶ 38-43).  However, the plaintiff has not alleged facts showing that Subway was acting with the intent of inducing Tactician to take any specific action when it delivered the Termination Notice to Tactician or that Tactician relied on the Termination Notice to its detriment.  To the contrary, Tactician disputed Subway's assertion that it had a right to terminate the Renewal Agreement, and it brought this action for damages based on Subway's alleged failure to comply with the Agreement.  Accordingly, the plaintiff has failed to state a claim for fraud, deceit and misrepresentation.

In an effort to salvage its claim, Tactician argues that paragraph 25 of its Verified Complaint establishes its reliance on Subway's misrepresentations.  This court disagrees.  In Paragraph 25, Tactician alleges that "[i]n reliance upon Subway's agreement to comply with all three years of the Renewal Agreement, Tactician entered into various agreements with third parties so that Tactician would be able to perform its obligations to Subway pursuant to the Renewal Agreement."  (Id. ¶ 25).  However, the fraud claim is based on Tactician's contention that the termination notice was the fraudulent act, not the Renewal Agreement itself.  Tactician has not alleged any facts in the complaint to show that it took any actions in response to the Termination Notice or that it was harmed by its reliance on the Notice.  Therefore, Count Five of the Verified Complaint must be dismissed.

### F.   Count Six: Claim Under Chapter 93A

The final Count of the Verified Complaint consists of a claim under Chapter 93A, which "prohibits 'unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce[.]'"  Bridge Over Troubled Waters, Inc. v. Argo Tea, Inc., 220 F. Supp. 3d 213, 220 (D. Mass. 2016) (quoting Boyle v. Int'l Truck & Engine Corp., No. 01-10039-DPW, 2002 WL 823810, at *6 (D. Mass. Apr. 23, 2002)).  Therein, Tactician alleges that "[t]he actions and activities of ... Subway" set forth in the Complaint "constitute unfair and/or deceptive trade acts and/or practices in violation of M.G.L. c. 93A, et seq, and wilful and knowing violations thereof, which have caused Tactician to suffer substantial damage, harm and loss." (Compl. ¶ 45).  Therefore, the plaintiff relies on the same facts that underlie its claim

[23]

for breach of contract to support its claim for violation of Chapter 93A.[8]  This is insufficient to state a plausible claim for relief.

"While Chapter 93A does not define 'unfair' or 'deceptive' practices, the statute encompasses conduct that is 'within the penumbra of some ... concept of unfairness [or deceptiveness]; is immoral, unethical, oppressive, or unscrupulous; and causes substantial injury to other businessmen.'"  ABC Soils, Inc. v. DRS Power Tech., Inc., 386 F. Supp. 3d 107, 111 (D. Mass. 2019) (quoting Kenda Corp., Inc. v. Pot O'Gold Money Leagues, Inc., 329 F.3d 216, 234 (1st Cir. 2003) (alteration in original).  To state a claim for relief under Chapter 93A, "a plaintiff 'must illustrate something beyond a mere good faith dispute, failure to pay, or simple breach of contract.'"  Id. (quoting Woods v. Wells Fargo Bank, N.A., 733 F.3d 349, 358 (1st Cir. 2013).  See also Aware, Inc., 604 F. Supp. 2d at 311 ("It is well established that a 'mere breach of contract, without more, does not amount to a c. 93A violation.'" (quoting Madan v. Royal Indem. Co., 26 Mass. App. Ct. 756, 762, 532 N.E.2d 1214 (1989)).  As this court has explained previously:

> For a breach of contract to rise to the level of a ch. 93A claim, the breach "must be both knowing and intended to secure 'unbargained-for benefits' to the detriment of the other party." Zabin v. Picciotto, 73 Mass. App. Ct. 141, 169, 896 N.E.2d 937, 963 (2008) (citation omitted).  Additionally, "[t]he breaching party's conduct must exceed the level of mere self-interest, rising instead to the level of commercial extortion or a similar degree of culpable conduct." Id. (quotations and citations omitted); see Whitman & Co., Inc. v. Longview Partners (Guernsey) Ltd., No. 14-cv-12047-ADB, 2015 WL 4467064, at *9 (D. Mass. July 20, 2015) ("In those cases where courts have found Chapter 93A violations arising out of a breach of contract, additional services or advantages were wrestled from the aggrieved party through false promises.").

---

[8] Tactician contends that its allegations in support of its claim for fraud, deceit and misrepresentation are sufficient to support a claim against Subway under Chapter 93A.  (Pl. Opp. Mem. at 10.)  For the reasons described above, however, those allegations are insufficient to support a claim that Subway's actions were fraudulent or deceitful.

ABC Soils, Inc., 386 F. Supp. 3d at 111.  "Generally, such a violation involves one party employing a breach of contract 'to gain an unfair advantage' over the other, vesting the breach with 'an extortionate quality.'"  Monotype Imaging Inc. v. Deluxe Corp., 883 F. Supp. 2d 317, 323 (D. Mass. 2012) (quoting Arthur D. Little, Inc. v. Dooyang Corp., 147 F.3d 47, 55 (1st Cir. 1998)) (additional citation omitted).

In the instant case, the Verified Complaint does not contain sufficient allegations to show that Subway's termination of the Renewal Agreement and failure to pay Tactician for a third year under the Agreement were done in bad faith.  There are no allegations indicating that Subway had no intention of carrying out its obligations under the Renewal Agreement at the time it entered into the contract.  Nor are there any facts to suggest that it terminated the Agreement in order to extort additional products, services or other unbargained-for benefits from Tactician.  Instead, the facts pled in the Verified Complaint illustrate nothing more than a reasonable disagreement arising from conflicting interpretations of a genuinely ambiguous contract.  See Citicorp N. Am., Inc. v. Ogden Martin Sys. of Haverhill, Inc., 8 F. Supp. 2d 72, 77 (D. Mass. 1998) (supporting dismissal of Chapter 93A claims based on breach of contract in cases where "the underlying contract dispute involves nothing more than reasonably conflicting interpretations of a genuinely ambiguous contract term").  Accordingly, Subway's motion to dismiss is allowed with respect to Count Six.[9]

---

[9] In light of this court's conclusion that Tactician has failed to state a Chapter 93A claim against Subway for the reasons articulated above, it is not necessary to address Subway's argument that the Chapter 93A claim should also be dismissed because Tactician has failed to allege that the unfair or deceptive acts or practices occurred primarily and substantially within the Commonwealth of Massachusetts.  (See Def. Mem. at 12).

### IV.   <u>CONCLUSION</u>

For all the reasons detailed herein, the "Defendant's Motion to Dismiss the Complaint Pursuant to Fed. R. Civ. P. 12(b)(6)" (Docket No. 6) is ALLOWED IN PART and DENIED IN PART. Specifically, Subway's motion to dismiss is ALLOWED with respect to Counts Two, Five and Six but DENIED with respect to Count One, Three and Four of Tactician's Verified Complaint.

<u>/ s / Judith Gail Dein</u>
Judith Gail Dein
United States Magistrate Judge